Title **UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **NATHANIEL HELLMAN,** | ) | |
| | ) | |
| | ) | **Civil Action No:**_1:23-cv-1436_ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | **VERIFIED COMPLAINT** |
| **v.** | ) | |
| | ) | |
| **AUSTIN COMMUNITY COLLEGE** | ) | |
| **DISTRICT** | ) | **JURY DEMAND** |
| **NONPROFIT CORPORATION** | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| _____ | ) | |

## <u>COMPLAINT</u>

    **COMES NOW** the Plaintiff, Mr. Nathaniel Hellman (hereinafter "Plaintiff"), by and through undersigned counsel, Tully Rinckey, PLLC, and hereby states the following complaint against Defendant, Austin Community College District (hereinafter "Defendant"), for the cause of action stated as follows:

### I.    <u>NATURE OF THE CASE</u>

1. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. for relief from discrimination based on race and retaliation.

### II.    <u>THE PARTIES</u>

2. Plaintiff is domiciled in Austin, Texas, Travis County, which is a county in this District.

3. Defendant is Austin Community College District, a nonprofit business.

~ 1 ~

4.  Plaintiff currently works for Defendant, Austin Community College District Police Department. Plaintiff began employment for Defendant on October 7, 2013.

5.  Defendant is a corporation headquartered in Austin, Texas 78752. Defendant carries on regular business in Texas and has offices in Austin, Texas, Travis County, which is a county in this District.

## III.     JURISDICTION AND VENUE

6.  This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1367, and 42 U.S.C §§ 2000e-5, as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et. seq*.

7.  This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

8.  Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of Defendant, an entity that operates within the state of Texas, and which actions occurred within this judicial district. 28 U.S.C. § 1391.

9.  Venue is further appropriate because a substantial part of the events or omissions giving rise to this Complaint occurred within this district.

## IV.     EXHAUSTION OF REMEDIES

10. Plaintiff filed his first EEOC charge of discrimination, Charge No. 451-2022-03189 against Defendant on November 15, 2022.

11. Plaintiff filed his second EEOC charge of discrimination Charge No. 451-2023-01013 against Defendant on May 1, 2023**.**

12. On August 21, 2023, the EEOC issued a determination to not proceed further with the investigation and made no findings on the merit for Charge No. 451-2023-01013. This determination also provided Plaintiff with his Notice of Right to Sue in Federal Court within ninety (90) days of receipt of the notice (i.e., August 25, 2023). *See* Exhibit 1, Notice of Right to Sue.

13. On November 6, the EEOC issued a second determination to not proceed further with the investigation and made no findings on the merit for charge No. 451-2022-03189. This determination also provided Plaintiff with his Notice of Right to Sue in Federal Court within ninety (90) days of receipt of the notice (i.e., November 6, 2023). *See* Exhibit 2, Notice of Right to Sue.

14. As such, Plaintiff timely files this action within ninety ("90") days of receipt of the Notices of Right to Sue of both EEOC charges.  Through this filing, Plaintiff hereby consolidates Charge 451-2023-01013 into Charge No. 451-2022-03189 for purposes of hearing this matter in the same cause of action because the parties are the same and there are common issues of law and fact.

15.   This complaint is therefore proper and timely.

## V.    FACTS

### A.  Background on Racial Discrimination and Harassment

16. Plaintiff is African American.

17. In 2013, Defendant hired Plaintiff as a District Patrol officer.

18. On August 2, 2013, Defendant received a memorandum from Mary Hensley, the Office of the Executive Vice President, at Austin Community College, to advise Defendant that its office has been notified that emails containing derogatory racial- and ethnic-related

remarks have circulated within the Defendant's Department.  *See* Exhibit 3, Mary Hensley Memo.

19. Officer Hellman learned about racial and ethnic emails on or about December 1, 2013, because many police staff were discussing the lack of appropriate action by the college.

20. In or around 2015, Defendant did not select Plaintiff to an open Sergeant position, despite Plaintiff's stellar employment record, experience, and training in the field.  Instead, Defendant only selected white police officers for Sergeant positions, despite Plaintiff having higher academic credentials than all selected candidates.

21. For the open Sergeant positions in 2015, Defendant management, by and through Chief Chester Lynn Dixon and/or Assistant Chief Silas Griggs sent Sergeant interview questions to select white police officers (Casey Pittman, currently a Sergeant) in advance of the interview, which Plaintiff did not receive the same benefit.

22. In or around 2015, Defendant steered Plaintiff away from a Field Training Officer training and job duty.

23. In December 2020, Chief of the ACCPD, Chester Lynn Dixon, and Sergeant Thomas J. Sullivan engaged in an exchange regarding an email that Dixon released to all employees of ACC PD that discriminated against members of the Chinese government and Chinese agents being "sneaky and good at what they do" referring to trying to get Chinese foreign nationals to return to China and face criminal charges or aiding the U.S.

**B.  Plaintiff's Non-Selection to Lieutenant Position**

24. On December 1, 2020, Sergeant Christopher Law emailed Supervisor Meeting Notes to Plaintiff which he encouragingly wished Officer Hellman "good luck" on the upcoming Lieutenant Interviews.

25. On or about Thursday, December 3, 2020, Plaintiff was qualified to interview for a Lieutenant Position and did attend a Zoom interview set up by Police Chief Secretary Alisha Aguilar-Lopez for this same Lieutenant Position.

26. On December 17, 2020, Defendant through Chief Chester Lynn Dixon selected Robert Horton, a white officer, to become Lieutenant position instead of Plaintiff.

27. Shortly after December 17, 2020, the Plaintiff received feedback regarding this interview from Lieutenant Jessica Horta-Perez, who made a comment to the Plaintiff that Chief Chester Lynn Dixon did not like the Plaintiff's Diversity and Equity Poem, which was submitted with the employment applications and when Plaintiff speaks about diversity and equity in the interviews for either Sergeant or Lieutenant applications.

**C. <u>Plaintiff's Non-Selection to Sergeant Positions</u>**

28. On January 25, 2022, Defendant posted Sergeant position R-1058 online on Workday for applicants to apply, and this position was scheduled to close online on February 8, 2022.

29. On January 26, 2022, Plaintiff received information from Officer Rene Saldivar, first by text and later by phone discussion that mentioned that Sergeant position R-1058 posted on January 25, 2022, was already preselected by Chief Chester Lynn Dixon (white) and Lieutenant Jesus Brantner (Hispanic).  Specifically, non-African American officers, Frank Miranda (Hispanic), Christopher Herndon (Hispanic), and a gender-specific female officer would be chosen as the next Sergeants.

30.  Rene Saldivar also told Complainant that he knew two more new Sergeant positions applications for employment would be opening in the future even though these two Sergeant position applications for employment had not yet been posted by the Defendant.

31. On February 1, 2022, the Defendant posted two new Sergeant positions to apply online on Workday software, including Sergeant positions R-1103 and Sergeant positions R-1056, where both positions had an end date to apply by February 15, 2022.

32. On February 7, 2022, Plaintiff completed the Workday employment application for an open Sergeant Position R-1058.

33. On or about February 7, 2022, Plaintiff spoke with Officer Kathy Dalton who stated that she learned from Lieutenant Jessica Horta-Perez that two sergeant positions had been pre-selected to be Officer Frank Miranda and Officer Christopher Herndon.

34. On February 14, 2022, Plaintiff completed the online Workday employment application for both Sergeant Position R-1103 and Sergeant Position R-1056.

35. The selecting officials for Sergeant R-1103, R-1058, and R-1056, were Chief Chester Lynn Dixon and Lieutenant Jesus Brantner.

36. On February 28, 2022, and March 1, 2022, the Defendant held interviews with all qualified applicants, including Plaintiff, for the three vacant Sergeant positions.

37. On March 17, 2022, Rene Saldivar texted the Plaintiff that Jessica Horta-Perez told him (Saldivar) that the Sergeant positions (all three) were already selected when the positions were announced and posted to apply online, and Saldivar stated he did not interview for these Sergeant positions because they were pre-selected.

38. On April 7, 2022, Defendant through the official announcement to the Department notified Plaintiff that he was not selected for all three (3) sergeant positions R-1056, -1103, and R-1058, and Defendant selected one white police officer, Kathy Dalton, and two Hispanic police officers, Frank Miranda and Christopher Herndon for these positions.

39. Since April 2022, the Plaintiff has repeatedly been racially steered away from and denied by Defendant from volunteering for the NIBRS Team.

D. **Racial Harassment by Defendant's Management**

40. On May 4, 2022, Officer Tomas Vasquez stated to Plaintiff that Chief Chester Lynn Dixon is a racist toward black people and many groups of people, but Austin Community College has never done anything to stop him.

41. On May 4, 2022, Plaintiff asked for the copies of some of the racist emails that Tomas Vasquez possessed regarding Chief Chester Lynn Dixon's behavior. Tomas Vasquez agreed to send them to Plaintiff since Vasquez was leaving his position with the Defendant and no longer feared retaliation.

42. Plaintiff began receiving copies of the racist and offensive emails sent by Chief Dixon from Officer Tomas Vasquez on May 4, 2022, which were emailed before Plaintiff was hired with the Defendant, that included:

   a. On July 31, 2012, Chief of the ACC PD, Chester Lynn Dixon, sends another email condemning the President as the first black American President for speaking out about the American Anthem and Flag, stating "Save America Before It's Too Late!"

   b. On June 25, 2012, Chief of the ACC PD, Chester Lynn Dixon, sends another email criticizing President Obama as not the person who killed Osama Bin Laden, trying to promote that President Obama wanted to take credit away from those who were involved in the capture of Osama Bin Laden, encouraging those who read or vote that "time to throw out the trash is nearly here" in reference to Obama being trash.

c.  On March 10, 2013, Chief of ACC PD Chester Lynn Dixon sent racist-based email about President Barak Obama's daughter, Malia, while she was on spring break, as Chief Dixon forwarded

d.  On March 8, 2013, Chief of ACC PD Chester Lynn Dixon sent an email to all officers of ACC PD, entitled From a Recon Marine in Afghanistan, forwarding an email that contains anti-middle eastern and anti-Afghanistan information, calling Afghanistan people scurrying rats, calling people sneaky, ruthless, Huns, roaming packs of savage, heartless beasts who feed on each other's barbarism, rock pit shit holes.

e.  On April 25, 2013, Chief of ACC PD sent a forwarded emailing, which encouraged the email to be shared, proposing that nightclubs be opened next door to a proposed build for a Mosque in New Zealand, and that the next door club that "would be gay, The Turban Cowboy, and the other topless bar called You Mecca Me Hot," and next door should also be a butcher shop "that specializes in pork" called Iraq o' Ribs," across the street would be a lingerie store called "Victoria Keeps Nothing Secret" with sexy mannequins, and next door would be an adult sex toy shop, "Koranal Knowledge, and on the other side a liquor store called "Morehammered."

f.  On June 8, 2013, Chief of ACC PD Chester Lynn Dixon sent an email referring to Senator Dianne Feinstein and her husband as crooks who we have running this county.

g.  On June 7, 2013, Chief of ACC PD Chester Lynn Dixon email that was forwarded to the officers of ACC PD that criticized Hilary Clinton, former secretary of state

and Presidential candidate, and made general reference to members of the Muslim faith being radical.

h.  On February 25, 2013, Chief of the ACC PD, Chester Lynn Dixon, sent a forwarded email entitled dishonoring the corps, attacking former President Obama as an untrustworthy person, especially when the Marine Corp service members were required to remove the bolts from their rifles during a Presidential inauguration parade, stating that President Obama doesn't trust the very men who put their lives on the line to serve their country.

i.  On May 12, 2013, Chief of the ACC PD, Chester Lynn Dixon, sent a forwarded email to the officers of the ACC PD criticizing a lawsuit filed against private citizens from planting cross-shaped markers in the ground on the Santa Barbara pier to symbolize those lives lost, trying to promote his religious ideals onto those recipients of his email.

j.  On May 8, 2013, Chief of the ACC PD, Chester Lynn Dixon, sent an email, entitled Profundities, stating in many different ways his criticism of the U.S. Congress.

k.  On May 6, 2023, Chief of the ACC PD, Chester Lynn Dixon, sent an email to the officers of ACC PD, entitled Hypocrisy is alive and well, stating there is high fashion in the Mosques, making reference to the Muslim people as a whole being radicalized, celebrating the mass murder of 9/11 and spreading more xenophobia.

l.  On February 15, 2013, Chief of the ACC PD, Chester Lynn Dixon, sent an email to the officer of the ACC PD, that discusses a child in school who wrote a new pledge of allegiance, criticizing the school system of how they are handling religion and indicating how the use of "God's name is prohibited by the state," stating we're

allowed to cuss and dress like freaks" and alluding that if the child says that, the child would be shot.

**E.  Defendant's Denial of Plaintiff's Shift Requests and Training Opportunities**

43. On June 9, 2022, Plaintiff emailed Sgt. John Worrell, his Sergeant, stating his wife was sick and that he (Plaintiff) intended to send a follow-up email requesting to continue his tour on C-shift.[1]

44. On June 13, 2022, Plaintiff requested by email to remain working on the overnight shift, known as "C" for another tour with his Sgt. John Worrell and requested Sgt. Worrell to notify the chain of command.

45. On or around June 13, 2022, Sgt. Worrell told Plaintiff the request was not approved by Chief Chester Lynn Dixon.

46. On August 10, 2022, Plaintiff told the Police Chief Dixon that Plaintiff repeatedly made requests to stay on C-shift for another tour to take care of his sick wife which were denied by Sgt. Worrell via Chief Dixon.    In addition, Plaintiff gave notice of his intent to apply for the Lieutenant Position and notice that he would be applying for the Austin Community College Board of Trustees November 2022 Public Election.

47. After this in-person meeting, Lieutenant Jesus Brantner sent Plaintiff an email the same day approving the request to stay on C-shift for another tour. Plaintiff was granted to remain on C shift until January 9, 2023.

48. On or around July 2022, Chief Chester Lynn Dixon denied Plaintiff training opportunities to attend the Bill Blackwood Law Enforcement Management Institute of Texas.

---

[1] "C" shift is an evening patrol shift from 10:30 p.m. to 6:30 a.m.

**F.  Plaintiff's Discrimination Complaints**

49. On August 9, 2022, Plaintiff attended a Zoom meeting hosted by ACC American
Federation of Teachers (ACC AFT) President David Albert and attended by current sitting
and publicly elected ACC District Board of Trustee Members Sean Hassan, current sitting
ACC Board of Trustee member Manuel Gonzalez, and candidate for office Steve Jackob's
to discuss racial and ethnic communication and issues within the Police Command Staff of
the ACC District Police Department particularly pertaining to the Police Chief Chester
Lynn Dixon's racist emails and the underrepresentation of many protected classes at the
top of police leadership Command Staff along with other goals.

50. On August 9, 2022, Plaintiff sent copies of racial and ethnic email communication that had
circulated within the ACC District Police Department from Chief Chester Lynn Dixon to
attendees at the Zoom meeting including AFT President David Albert, ACC Board of
Trustee Sean Hassan, ACC Board of Trustee Manny Gonzalez, and ACC Board of Trustee
Candidate Steve Jackobs.

51. On August 10, 2022, Plaintiff applied officially to run in the open seat against Steve
Jackobs for Austin Community College District Board of Trustees Place # 6.

**G.  Plaintiff's Non-Selection to Lieutenant Position**

52. On August 15, 2022, Plaintiff applied online for a Lieutenant position R-2439 with
Defendant.

53. For an unknown reason, the Defendant, after receiving Plaintiff's completed application
for Lieutenant R-2439, closed the Lieutenant position R-2439 on August 16, 2022, and
reposted the Lieutenant position, R-2439, on August 23, 2022, until September 2, 2022.

54. However, during the time Lieutenant position R-2439 was closed, Defendant made changes to the Texas Police Chief Association ("TPCA") (Best Practices) 4.06, that implemented the policy change for the supervisory experience required for Lieutenant, which immediately disqualified the Plaintiff's eligibility to apply for this Lieutenant position.

55. On October 14, 2022, Plaintiff learned Thomas Sullivan was selected for Lieutenant Position R-2439.

56. Plaintiff was qualified to interview for an earlier Lieutenant Position in 2020 for which Robert Horton was selected, but Plaintiff was not given any opportunity to interview for this Lieutenant Position R-2439.

57. On October 14, 2022, Plaintiff requested to stay on C shift another tour to better support his wife, family, and goals, which was approved that same day, but he was not going to be granted any further extensions unless he was on FMLA.

58. On December 28, 2022, Officer Crescensio Hernandez emailed a copy of the Mary Hensley Memorandum from August 2, 2013, to Plaintiff after they met.  Hernandez stated to the Plaintiff he has experienced many instances of racism and discrimination over his 25-year career as a Police Officer working at Austin Community College District Police.

H. **Plaintiff's Non-Selection to Sergeant Position R-3389**

59. On January 12, 2023, Plaintiff applied for a Sergeant position R-3389.

60. On January 28, 2023, Lieutenant Thomas Sullivan of ACC PD sent an email to police staff that targeted a Black African American advocacy and nonviolent organization, The Austin Justice Coalition, that was holding a protest at a historically black college institution, Houston-Tillotson University in Austin, Texas. This event was held off the Austin Community College Campus and Thomas Sullivan admitted that no specific threats were

made by The Austin Justice Coalition, but Police Officers should remain vigilant of this Austin Justice Coalition when no specific threats whatsoever to cause harm were made by the Austin Justice Coalition.

61. On February 7, 2023, Plaintiff received a communication from Jessica Horta-Perez that she had met with the ACC Attorneys and provided a statement regarding Plaintiff's EEOC Charge of Discrimination.

62. On February 7, 2023, Jessica Horta-Perez stated to Plaintiff that she knew racism and discrimination is hard to prove, that she wished she had recorded or taken statements about racist comments back in her troubling days working for the ACC District Police Department, but it was merely hearsay from what she was told by the Defendant's attorneys.

63. On March 21, 2023, Plaintiff interviewed for the R-3389 Sergeant position.

64. During the March 21, 2023 interview, Plaintiff experienced hostile work environment harassment by Lieutenant Jesus Brantner in response to Plaintiff having filed the EEOC Charge No. 451-2022-03189, as evidenced by Lieutenant Jesus Brantner's hostile tone and aggressive questioning about Plaintiff's credentials that had never been an issue in prior interviews.

65. On April 14, 2023, Chief Dixon did not select Plaintiff for the R-3389 Sergeant position.

**I.  Defendant's Additional Denials of Plaintiff's Shift and Training Requests**

66. On June 12, 2023, Plaintiff continued to request to stay on C-shift to go to School Full-time during the entire day and specifically requested this accommodation for Fall 2023 Registration, but Chief Chester Lynn Dixon and Lieutenant Jesus Brantner denied the requests.

67. However, Plaintiff was aware of Tomas Vasquez in 2022 was able to work the C shift, so he could attend school during the daytime.

68. On June 22, 2023, Lieutenant Jesus Brantner notified Plaintiff that he (Plaintiff) would be coming off of C-shift on August 13, 2023, which was weeks earlier than the C rotation was supposed to end.

69. The Plaintiff had previously given notice on June 12, 2023 to Chief Chester Lynn Dixon, Lieutenant Jesus Brantner, and Human Resources Director Kelly Torrico that he had intended to enroll full-time to take classes for the Registration of Fall 2023 Semester and that he requested to extend C shift for this reason.

70. On or around July 2023, Chief Chester Lynn Dixon denied Plaintiff training opportunities to attend the Bill Blackwood Law Enforcement Management Institute of Texas.

71. On August 21, 2023, Lieutenant Jesus Brantner moved the C Shift Rotation up to an earlier date, where Plaintiff would come off this duty earlier than promised, taking Officer Hellman off of C-shift before the first day of class for the Fall 2023 Semester.

72. In previous years C Shift rotation, including the year of 2022, Officers did not come off of C shift Rotation until the first week of September 4, 2022, after the Fall 2022 semester started.

73. Lt. Jesus Brantner moved up the C-shift rotation to take Plaintiff off C shift earlier, which interfered with Plaintiff taking Fall 2023 classes full-time throughout the entire day.

74. On September 4, 2023, Plaintiff called and met with Sergeant Roman Lopez who described many of the racist and ethnic communication that Chief Chester Lynn Dixon has communicated within his ACC work email and within the ACC Police Department while on duty.

75. On October 3, 2023, Officer Marshall Brumfield emailed Plaintiff some of the racial and ethnic communication sent by Police Chief Chester Lynn Dixon over the years upon Plaintiff's request and stated that he believes that Chief Chester Lynn Dixon has helped spread harmful racial and ethnic culture in the ACC District Police Department.

76. In late September and early October of 2023, Plaintiff worked at the Northridge campus three to four weeks with Sergeant Kathy Dalton, in which she allowed Plaintiff to observe many racial and ethnic communications which she saved regarding members of the command staff, and stated she believes women and black people have faced discrimination within the ACC District Police Department, but the college has done nothing about it in the past.

**J.  Additional Discrimination and Harassment**

77. On September 6, 2023, Plaintiff applied for a sergeant position R-4832 with Defendant, and he interviewed for it on September 21, 2023.

78. On October 13, 2023, Defendant through Chief Dixon did not select the Plaintiff for the R-4832 Sergeant position, choosing a non-African American officer.

79. On October 19, 2023, Plaintiff requested to have the opportunity to participate or form a Recruiting Team for the ACC District Police Department, but he has received no response regarding this opportunity as of the date of this complaint.

80. On or about October 27, 2023, Officer Christopher Winn text the Plaintiff that the Police Chief Chester Lynn Dixon had a meeting with him (Winn), that the Police Chief spoke about a certain unnamed individual officer in the Police Department, and this unnamed officer was destroying the Police Department from within.

81. Officer Christopher Winn knew the unnamed individual that the Chief was describing was the Plaintiff.

82. On October 27, 2023, Christopher Winn texted the Plaintiff that the Police Chief and Command Staff are mad at the Plaintiff, and they are going to come after the Plaintiff and that the Plaintiff needs to get ready for it.

83. On November 7, 2023, Officer Jose Rodriguez told the Plaintiff that Police Chief Chester Lynn Dixon had a meeting at Riverside Campus, and he described one unnamed officer in such a way that led Jose Rodriguez to believe the Police Chief Chester Lynn Dixon was specifically targeting the Plaintiff.

84. On November 10, 2023, Officer Rene Saldivar told the Plaintiff that Chief Chester Lynn Dixon had a meeting at HAYS Campus which was attended by Rene Saldivar at Hays Campus.

85. On or about November 10, 2023, Saldivar stated police Chief spoke negatively about one unnamed officer in the ACC District Police Department causing trouble in the Police Department who was not named, but the Chief described that one officer in such a way that Saldivar believed that Chief Chester Lynn Dixon was trying to target the Plaintiff to turn other staff against the Plaintiff and for them to all go after the Plaintiff.

## VI.   CAUSES OF ACTION
### COUNT ONE
**(Discrimination on the Basis of Race in violation of Title II, 42 U.S.C., § 2000e, *et seq*)**

86. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

87. As a person of African American descent, Plaintiff is a member of a protected class.

88. Because of his race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including his non-selection for the position of Sergeant, R-1058, R-1103, R-1056, R-3389, R-4832 and Lieutenant R-2439, removal from C shift, received racist and xenophobic emails, schedule changes that disrupted family responsibilities and school responsibilities, and racially steered away from promotional and training opportunities of Field Training Officer ("FTO") and National Incident Based Reporting System ("NIBRS").

89. The Defendant's improper adverse actions materially affected the terms, privileges, and conditions of Plaintiff s employment as it illegally blocked Plaintiff from seeking a promotion, increased salary, and obtaining other related promotional opportunities that are available for only certain ranking officers.

90. Defendant knew that Plaintiff is African American prior to subjecting Plaintiff to the aforementioned material adverse employment actions and was aware of the discrimination Plaintiff was subjected to because of his race

91. Other employees, including Frank Miranda, Christopher Herndon, Kathy Dalton, Thomas Sullivan, Ramon Tovias, Gabriel Rodriguez, who were similarly situated, but members of a different class than Plaintiff, were treated more favorably than Plaintiff in the terms and conditions of employment.

92. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

93. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

94. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his race.

95. Defendant discriminated against Plaintiff because of his race by engaging in, tolerating, or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

96. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages, including but not limited to past and future loss of income, benefits, promotion, and promotional opportunities, career opportunities, and costs, and is entitled to all available legal and equitable remedies.

97. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.  Further, Defendant's treatment and actions were ongoing throughout the period stated in this complaint.

98. Plaintiff has incurred lost wages, loss of reputation, and loss of career opportunities now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

99. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.


**COUNT TWO**

**(Discrimination on the basis of Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C., §2000, *et. Seq.*)**

100. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

101.     Plaintiff engaged in protected activity when he filed a prior EEOC Charge of Discrimination, Charge no. 451-2023-03189; attending meeting with Defendant members to discuss racial and ethnic communication and issues within the Police Command Staff of the ACC District Police Department; complaining of racial and ethnic email communication that had circulated within the ACC District Police Department and claiming he was being racially discriminated against by the Defendant for non-selection of sergeant vacancies

102.     Because of his protected activity, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including non-selection for Lieutenant position No. 2439 and Sergeant position No. 3389.

103.     Defendant knew of Plaintiff's protected activities as Plaintiff had reported many of the violations she discovered to Defendant, by and through its employees and agents.

104.     Plaintiff's protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

105.  The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

106. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her protected activity.

107. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his participation and opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

108. Defendant discriminated against Plaintiff because of his protected activity by non-selecting Plaintiff for the two stater positions herein.

109.  As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, and costs, – and is entitled to all available legal and equitable remedies.

110. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.  Further, Defendant's treatment and actions were ongoing throughout the period stated in this complaint.

111. Plaintiff has incurred lost wages, loss of reputation, and loss of career opportunities now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

<u>**COUNT THREE**</u>
**(Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, et. Seq.)**

112. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

113. As a result of Plaintiff's protected status, Plaintiff's supervisors routinely humiliated Plaintiff and engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment in violation of Title VII.

114. Plaintiff was regularly and continually subjected to harassing conduct that alleged throughout this Complaint, which created a hostile and abusive work environment.

115. Plaintiff believes that he was subjected to a hostile work environment and reprisal based on his race.

116. Defendant's unlawful conduct was unwelcome.

117. Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint, including the non-selection of the sergeant position and lieutenant position, created a hostile and abusive work environment.

118. Plaintiff was subjected to harassment because his race and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

119. Defendant knew or should have known of the harassment. Defendant failed to adequately investigate the harassment and took no effective, immediate, or remedial action. Despite Plaintiff's complaints, the harassment continued unabated and increased over time.

120. By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

121. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.

122. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages, including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs, and is entitled to all available legal and equitable remedies.

123. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

124. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.  Award monetary damages and equitable relief for all harm Plaintiff has  sustained as a result of Defendant's unlawful conduct, including for lost wages,  lost job benefits, lost of training and promotional opportunities he would have received but for Defendant's unlawful conduct;

b.  Move Plaintiff to "C" Night Shift indefinitely and permanently until he requests to return to his day shift;

c.  Promote Plaintiff to Sergeant position;

d.  Award reasonable attorney fees, costs, and expenses incurred for this action;

e.  Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

f.  Require supervisory training for the supervisors at issue herein;

g.  Award equitable, declaratory, punitive, and injunctive relief; and

h.  Award such other and further relief as this Honorable Court deems just and  proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues set forth herein pursuant to Fed. R. Civ. P. 38.

Respectfully Submitted,

By: /s/ Sean Timmons
Sean Timmons, Esq.
State Bar No.: 24067908

~ 22 ~

Tully Rinckey, PLLC.
18722 University Blvd
Suite 235
Sugar Land, Texas 77479
stimmons@tullylegal.com
(832) 240-3273
(832) 533-8999 (facsimile)